# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID & VENITA LACROIX** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-0609** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **SECTION "K"(4)** |

## ORDER AND OPINION

Before the Court is the "Motion in Limine to Exclude the Estimate and Testimony of Jim Kotter" filed on behalf of defendant State Farm Fire and Casualty Company ("State Farm")(Doc. 36). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants the motion in part and denies it in part.

## BACKGROUND

David and Venita Lacroix own a home located at 112 Silverwood Drive in Slidell, Louisiana. The home sustained significant damage as a result of Hurricane Katrina, including flooding and damage to the roof. At the time of Hurricane Katrina, State Farm entities provided both the homeowner's insurance and the flood insurance on the property.

Following the hurricane, plaintiffs filed claims with State Farm under both policies. Accordingly to plaintiffs, State Farm paid them $33,472.88 under the flood policy for structural damage, including $30,029.31 for interior damage.[1] Additionally, under the homeowner's policy State Farm paid plaintiffs approximately $11,000.00 for wind-related damage to structure of which approximately $3,000.00 represented interior damage.

---

[1] State Farm states that it paid plaintiffs $32,411.42 under the policy; no explanation for the discrepancy in the amounts has been offered by either party.

Plaintiffs, thinking that State Farm had failed to pay them the full amount of their damages, plaintiffs filed suit against State Farm seeking to recover, among other things, the policy limits under their homeowner's policy.

Plaintiffs retained Jim Kotter to inspect their home and prepare an estimate of the cost of repairing the wind damage. At the time Mr. Kotter inspected the home, the damages, except some exterior damage to the siding had been repaired. Prior to preparing a repair estimate, Mr. Kotter spoke to the insured, examined photographs taken by the insured, and reviewed "the report provided by State Farm," including State Farm's photographs of the damaged property. Mr. Kotter did not review any receipts, bills, or other documents reflecting the actual costs incurred in repairing the damaged home. Mr. Kotter's report states "[t]his insured sustained substantial damage to their [sic] dwelling caused by windstorm. We have had an opportunity to inspect the building and have quantified the loss, as per their submission." Doc. 36-3. Attached to the report is a line item estimate for repairing the damages from wind using costs obtained from the December 2009 edition of computer software for estimating. Mr. Kotter's total estimate for wind damages is $38,331.53 including $20,308.43 for exterior repairs, $10,523.81 for interior repairs, and $7,398.29 for material sales tax, overhead, and profit for all wind damage.

State Farm seeks to exclude Mr. Kotter's estimate and testimony contending that "the estimate and related testimony are unreliable and that Mr. Kotter is unqualified to render the opinions contained in the report." (Doc. 36-2, p. 1).

## LAW AND ANALYSIS

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Limited v. City of Austin*, 138 F.

2

3d 1036, 1050 (5th Cir. 1998). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule reflects the Supreme Court's decisions of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797, 125 L.Ed.2d at 484. The second prong, i.e., whether the proposed testimony will assist the

trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.*, citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means fo attacking shaky but admissible evidence." *Id*. (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Although State Farm states in its "Memorandum in Support of Motion in Limine to Exclude

the Estimate and Testimony of Jim Kotter" that Jim Kotter is "unqualified to render the opinions" in his report,[2] defendant challenges only Mr. Kotter's methods of preparing his estimate, not Mr. Kotter's qualifications to prepare estimates in general. Mr. Kotter's resume reflects that he is a licensed adjuster in several states, including Louisiana, has extensive experience in the construction business, including residential construction, has been employed as an estimator, and has, since Hurricane Katrina, been employed reviewing estimates and re-writing their scopes to reflect actual damages and construction costs. Additionally, Mr. Kotter has previously been accepted and recognized as an expert in the field of insurance adjusting in federal court. Based on those qualifications, Mr. Kotter is qualified to offer expert testimony concerning the cost of repairing damaged property.[3]

The gravamen of State Farm's challenge to Mr. Kotter's qualifications is its contention that in preparing his estimate he used an unreliable methodology because he failed to review any documents showing actual repair costs and relied on "an estimating software price list for December 2009 . . .." Doc. 36-2, p. 3. In urging that Mr. Kotter used an unreliable methodology in preparing his estimate, defendant relies on *Tardo v. State Farm Fire and Casualty Company*, C.A. 08-1165 (E.D. La. June 22, 2009), *Williams v. Allstate Insurance Company*, 2008 WL 5110604 (E.D. La. November 26, 2008), and *Lightell v. State Farm Fire and Casualty Company*, C.A. 08-4393 (E.D. La. December 28, 2009) in which district judges excluded expert testimony concerning estimates of the cost of repairing homes damaged by Hurricane Katrina which had already been repaired

---

[2] Doc. 36-2, p. 1.

[3] Because State Farm's motion does not seek to exclude Mr. Kotter's testimony with respect to the causation of the damage to the plaintiffs' home, i.e, wind damage versus water damage, the Court makes no ruling with respect to Mr. Kotter's expertise in that area.

5

where the proffered experts failed to review documents establishing the actual costs of repairs but rather developed their estimates after only visiting the repaired property and interviewing the insureds concerning the damage. Each of those cases can be readily distinguished. Here, unlike the proffered experts in *Tardo* and *Williams*, Mr. Kotter prior to preparing his estimate reviewed the insurer's claim file, including photographs, thereby allowing him to see the damage prior to it being repaired. In *Lightell* the purported expert did review the claim file, including the photographs, but "was unable to use the photographs contained in the file to compute his estimate because he could not understand the photographs." *Lightell v. State Farm Fire and Casualty Company*, C.A. 08-4393 (E.D. La, December 28, 2009), p. 7. State Farm has not suggested that Mr. Kotter did not understand the photographs in plaintiffs' claim file.

Mr. Kotter's failure to consider the actual cost of the repairs to the home or to explain why those costs were not relevant in estimating the damages is troubling; however, those failures do not render his methodology unreliable. As the Supreme Court stated in *Daubert* "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means fo attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 596. (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)).

Turning to the second prong of *Daubert*, i.e., whether the testimony will assist the trier of fact to understand or determine a fact in issue, the Court concludes that with respect to the damages that have already been repaired, Mr. Kotter's testimony will not assist the trier of fact or determine a fact in issue.

Because jurisdiction in this case is based on 28 U.S.C. §1332, *Erie Railroad Company v.*

*Tompkins*, 304 U.S. 64 (1938), commands that state law, i.e., Louisiana law, applies to this case.

Under Louisiana law:

> "Damages may be predicated on the basis of estimates only when the loss has not been repaired. If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill. Gambrell v. Audubon Insurance Company, La. App., 115 So.2d 727. Plaintiff must produce the best evidence available in support of his claim. Sutherlin Sales Co. v. United Most Worshipful, Etc., La. App. 127 So.2d 253.
>
> Where invoices, statements, or records of accounts expended in the repair of damages are in the possession of plaintiff or are available or attainable, such records constitute the best evidence and should be offered in proof of plaintiff's claim. In the event such evidence is not available or attainable, proof of loss should be made by offering the testimony of the person furnishing the material, labor, or supplies when such testimony may be produced. Upon proper showing that the testimony of such persons is not available, the court may allow a claim for damages, upon the production of such available testimony as fairly and reasonably establishes plaintiff's claim under the circumstances. Tooker v. Zuberbier, La. App., 195 So.2d 744."

*Volkswagen of America, Inc. v. Robertson*, 713 F.2d. 1151, 1169 (5th Cir. 1983) quoting *Lambert v. Allstate Insurance Company*, 195 So.2d 698, 700-01 (La. App. 1st Cir. 1967). More recently, a Louisiana court has held that "the actual governs over the theoretical and that the record will support no reasonable conclusion other than that the cost of repairs must be based on actual invoices paid for work done to the . . . building." *McAshan v. Jack's Pest Control*, 782 So.2d 1, 7 (La. App. 4th Cir. 2000).

During the telephone status conference held on May 27, 2010, counsel for plaintiff conceded that the repairs to the interior of the home have been completed, and he did not assert that the repairs

7

as completed had not restored the home to its condition prior to the storm.[4] Therefore, pursuant to Louisiana law, Mr. Kotter's estimate of the cost of repairing the interior damage will not assist the finder of fact in determining damages for those items. Therefore, defendant's motion in limine is granted to the extent that it seeks to exclude Mr. Kotter's estimate and testimony with respect to interior damages. Additionally, the Court grants State Farm's motion with respect to any damages to the exterior of the home which have already been repaired.[5] However, the motion is denied to the extent that it seeks to exclude Mr. Kotter's estimate and testimony concerning the cost of repairs to the exterior of the home which have not been repaired.

New Orleans, Louisiana, this 2nd day of June, 2010.

                                      STANWOOD R. DUVAL, JR.
                                    UNITED STATES DISTRICT JUDGE

---

[4] In connection with its opposition to the motion, plaintiff has submitted $33,314.77 worth of receipts and invoices incurred for repairs to the interior of the home. Doc. 46-2.

[5] The amount of damages tendered to date for damages to the exterior of the home is not clear; however, during the telephone status conference held on May 27, 2010, there was a representation that $3,331.53 is due for exterior repairs.